Kevin P. Sullivan, Esq. (#177757)
PRAIRIE SCHWARTZ HEIDEL, LLP
401 "B" Street, Suite 2400
San Diego, CA 92101
619-699-3500
fax 619-699-3555
ksullivan@pshlawyers.com

Attorneys for Plaintiff and Counter-Defendant
UNIQUE FUNCTIONAL PRODUCTS, INC.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIQUE FUNCTIONAL PRODUCTS, INC., a California corporation,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JCA CORPORATION, a Washington corporation; and DOES 1 through 25, inclusive,<br><br>　　　　Defendants.<br>_____<br>JCA CORPORATION, a Washington corporation;<br><br>　　　　Counter-Claimant,<br><br>　　v.<br><br>UNIQUE FUNCTIONAL PRODUCTS, INC., et al.,<br><br>　　　　Counter-Defendants. | CASE NO.   3:09-cv-00265-JM AJB<br><br>Hon. Magistrate Anthony J. Battaglia<br>Dept:   A<br><br>**EX PARTE APPLICATION TO CONTINUE SCHEDULING ORDER DATES, AND BRIEF IN SUPPORT** |

　　　Plaintiff/Cross-Defendant Unique Functional Products, Inc. ("UFP") files this Ex Parte Application to Continue Scheduling Order Dates, and Brief In Support.

**EX PARTE APPLICATION**

　　　UFP seeks a 90-day continuance of all of the dates in the Scheduling Order

for this case for good cause. Good cause for the continuance of the dates is based on the following reasons: (1) Defendant JCA Corporation ("JCA") recently served UFP's only trial counsel with a deposition subpoena and has therefore caused the need for UFP to retain new lead trial counsel at this late stage of the case based on an ethical conflict under the California Rules of Professional Conduct; and (2) UFP's only counsel in the case recently has been required to expand his already full workload to fill the role of outside General Counsel for a large firm client, which role was previously held by a law partner who has been incapacitated by a medical condition.

None of the dates in the Scheduling Order have yet passed. No party has previously requested a modification of the Scheduling Order dates.

## BRIEF IN SUPPORT OF EX PARTE APPLICATION

### A. FACTUAL BACKGROUND

#### 1. Until April 2010, JCA Never Indicated It Would Seek To Depose UFP's Trial Counsel.

UFP's Complaint, which was filed in January 2009, included a claim about a payment obligation of JCA to UFP. The payment obligation was set out in a letter agreement prepared by Kevin Sullivan ("Sullivan") and signed by representatives of both UFP and JCA in July 2003. Sullivan was a scrivener for the agreement in that the terms of the payment obligation were negotiated and agreed to only by the parties. (Declaration of Kevin Sullivan filed in support of this Application, ¶ 3.)

Sullivan has always been the lead trial counsel for UFP. (For a time, Walter Taylor was also listed as a counsel of record for UFP. But Mr. Taylor left the firm in June 2009.) (Sullivan Decl., ¶ 4.)

JCA's Answer to the Complaint, which was filed in February 2009, did not indicate that Sullivan's testimony would be an issue in the case. Nor did JCA's Initial Disclosure, served in May 2009, list Sullivan as a person with

discoverable information in the case. (Sullivan Decl., ¶ 5.)

Documents relating to UFP's enforcement of JCA's payment obligation were produced to JCA's counsel between May 2009 and September 2009. The documents included one 2003 email message from JCA's president to Sullivan, as well as two or so other related documents. Further, the JCA payment obligation was a significant item addressed in September 2009 during the deposition of UFP's president and other company representatives. But JCA's counsel never stated through September 2009 that it might seek to depose Sullivan on that matter. (Sullivan Decl., ¶ 6.)

JCA also did not state at the time of the Case Management Conference in November 2009 that it intended to depose Sullivan. (Sullivan Decl., ¶ 7.)

### 2. JCA Served UFP's Trial Counsel With A Deposition Subpoena in April 2010.

On about April 7, 2010, Sullivan was served with a deposition subpoena in the case. Before then, Sullivan was never informed that JCA would depose him or likely make him a witness in the case. (Sullivan Decl., ¶ 8.) JCA's counsel never provided any advance notice or indication to Sullivan that he could be a witness in the case until the deposition subpoena was served. (Sullivan Decl., ¶ 8.) The deposition subpoena was served less than three months before the discovery cut-off date, and less than two months before the deadline to disclose expert witnesses in the case.

JCA intends to proceed with the deposition of Sullivan and rejected an offer that information be obtained through stipulations. (Sullivan Decl., ¶ 9.)

### 3. UFP Had To Retain New Trial Counsel In April 2010.

After being served with the deposition subpoena, Sullivan consulted with UFP about the ramifications of his possible witness status at trial. With direction from UFP, Sullivan then began interviewing new lead counsel in the case. Three firms were interviewed. (Sullivan Decl., ¶¶ 10-11.) The law firm of Fuller Jenkins was selected as new trial counsel, with Craig Fuller as lead

counsel. The Association of Counsel was filed today. (Sullivan Decl., ¶ 11.)

Mr. Fuller had no knowledge about the case before being contacted by Sullivan. He requires adequate time to "come up to speed" about the case. (Sullivan Decl., ¶ 12; Declaration of Craig Fuller filed in support of this Application, ¶ 2.) As new lead trial counsel, Mr. Fuller needs to direct and participate in (i) the selection of expert witnesses for UFP and the scope of their testimony; (ii) the defense of five depositions noticed of UFP representatives; (iii) the questioning of two third-party witness depositions that have been noticed; (iv) the final preparation of a deposition notice to JCA that includes a significant list of categories of testimony for the deposition; (v) the preparation of final requests for production of documents to JCA; (vi) the preparation of other final deposition notices (with attendant document demands) to two to three other JCA representatives; (vii) the final preparation of a deposition notice to a third party that includes a significant list of categories of testimony for the deposition, as well as document demands; and (viii) the preparation of overall litigation strategies and remaining discovery plans in the case. Mr. Fuller also needs to coordinate these litigation issues with his other trial calendars. (Sullivan Decl., ¶ 12; Fuller Decl., ¶ 4.)

### 4. Sullivan Has Also Had To Cover The Workload For A Law Partner Who Has Been Incapacitated Since March 2010.

Beginning in mid-March 2010, Sullivan has been primarily required to manage the workload of a partner who unexpectedly suffered from a serious medical condition. The medical condition left the law partner unable to practice law entirely for about five weeks. (Sullivan Decl., ¶ 14.) This medical condition prevented the law partner from providing legal services for a large non-profit education entity that is the largest client of the firm. While the law partner has recovered some, he still can provide only very limited services to the client. It is uncertain when the law partner will be able to

-4-

return to a full workload. But it is not likely that such a return will occur, if at all, before the next two to three months. (Sullivan Decl., ¶ 14.)

Given the medical condition of the law partner, Sullivan has been the primary attorney required to cover the outside General Counsel responsibilities for the client. Another law partner provides some assistance in representing the client. But the client has requested that Sullivan be the primary attorney in the firm to handle the client's workload and act as outside General Counsel for the institution. (Sullivan Decl., ¶¶ 15-16.) That workload is extensive in that it relates to a large education institution and its seven affiliated entities. (Sullivan Decl., ¶ 16.)

**5.   This Application Was Filed Soon After JCA Refused To Agree To Continue Any Scheduling Order Dates.**

Sullivan left messages with JCA's counsel on April 20, 2010, to discuss the need under the circumstances to continue the Scheduling Order dates. (Sullivan Decl., ¶ 17.) Sullivan then spoke with JCA's counsel on the matter on April 21, 2010. JCA's counsel understood the request. But he said he needed to confer with his client and would respond no later than noon on April 27, 2010 regarding whether JCA would consent to seek a continuance of the dates. (Sullivan Decl., ¶ 17.)

. . . . .

JCA's counsel was unavailable to discuss the matter on April 27, 2010. He did not inform Sullivan until April 28, 2010, that JCA would not consent to move any dates in the Scheduling Order. (Sullivan Decl., ¶ 18.) This Application was filed just two days later.

**6.   JCA's Counsel Was Provide With Notice Of This Application.**

Sullivan provided notice to JCA's counsel by email at about 7:00 a.m on April 29, 2010, that this Application would be filed as early as April 30, 2010. Further notice about the filing of the Application was provided to JCA's counsel today. (Sullivan Decl., ¶ 19.)

**B.     AUTHORITY**

Good cause exists to continue the Scheduling Order dates. The focus of inquiry as to a party's request to modify a scheduling order is on the reasons for seeking the modifications. The general factors to consider are: (1) diligence in assisting the court in fashioning a workable scheduling order; (2) any actual or anticipated noncompliance resulted from circumstances not reasonably anticipated at the time of the scheduling conference; and (3) a prompt request for modification once it became apparent the compliance was not possible. *Jackson v. Laureate, Inc.* (ED CA 1999) 186 F.R.D. 605, 608.

Another relevant factor is whether UFP will be prejudiced if the dates are not continued. *United States, ex rel., Schumer v. Hughes Aircraft Co.,* 63 F.3d 1512, 1526 (9th Cir. 1995), *cert. granted in part,* 519 U.S. 926, 117 S.Ct. 293, *vacated on other grounds,* 520 U.S. 939, 117 S.Ct. 1871, (1997) (citing *Smith v. United States,* 834 F.2d 166, 169 (10th Cir. 1987)).

A formal motion is not needed to modify the Scheduling Order dates. The court may modify the schedule after consultation with the attorneys in the case provided good cause is shown. (Adv. Comm. Notes on 1983 Amendment to Rule 16(b).)

**1.     UFP Did Not Know At The Case Management Conference That Sullivan Would Be A Witness In the Case Or That Sullivan Would Have To Be <u>Primarily Responsible To Handle His Law Partner's Workload Due to Illness</u>.**

UFP was diligent in fashioning what it thought would be a workable Scheduling Order. (*See* Sullivan Decl., ¶¶ 7 and 13.) In November 2009, Sullivan was not aware that he would be deposed in the case and apparently would be a fact witness at trial. (Sullivan Decl., ¶ 7.) The reasons for modification of

the Scheduling Order dates (the ethical conflict created by JCA, and, to some extent, the incapacity of Sullivan's law partner) were not known until about five months after the Scheduling Order was issued.

Because Sullivan may be fact witness at trial, UFP needs new trial counsel. UFP is not comfortable that Sullivan may have a dual role as a witness and an advocate at trial, with Sullivan being subject to cross-examination and likely attempted attacks on his credibility. (Sullivan Decl., ¶ 10.) So, since early April 2010, Sullivan has had to divert his attention and effort in the case to finding new trial counsel and assisting that new counsel in starting to become familiar with the case. (Sullivan Decl., ¶¶ 11 - 13.) This development was not known when the Scheduling Order was prepared.

Further, Sullivan was not aware in November 2009 that he would have to assist his law partner with handling a significant workload for the firm's largest client. This also has diverted some of Sullivan's attention and effort from this case.

Absent these circumstances, which were unanticipated in November 2009, Sullivan believes he would have been able to meet the dates in the Scheduling Order. (Sullivan Decl., ¶¶ 7 and 13.)

**2. UFP's Anticipated Noncompliance With The Current Scheduling Order Dates Results From Circumstances Not Reasonably Foreseen At The Scheduling Conference.**

As explained above, UFP needs to obtain new lead trial counsel due to JCA's litigation tactic apparently to make Sullivan a fact witness in the case. This circumstance was not anticipated at the Scheduling Conference.

Depending on developments relating to Sullivan's noticed deposition, Sullivan may be required to withdraw completely from the case. (Sullivan Decl., ¶ 10.) Under the California Rules of Professional Conduct, Rule 5-210, Sullivan "shall not act as an advocate before a jury which will hear testimony" from him if the subject of the testimony relates to a material issue in the case.

1  (Emphasis supplied.)  Sullivan does not know the litigation strategies of JCA
2  about his sought-after testimony on the payment obligation matter.  And Sullivan
3  never understood that his role in acting as a scrivener for the parties'
4  agreement on the payment matter was in dispute.  (Sullivan Decl., ¶ 8.)  But
5  Sullivan's ability effectively to represent UFP is now in doubt.  UFP is
6  not comfortable
7  . . . . .
8  with the possible dual role of Sullivan as potential advocate and witness at
9  trial.  (Sullivan Decl., ¶ 10.)  So UFP understandably wants to retain new lead
10 counsel in the case.  (Sullivan Decl., ¶ 10.)

11  As new lead counsel with responsibility for the conduct and success of the
12 case, Mr. Fuller needs to direct and participate in (i) the selection of expert
13 witnesses for UFP and the scope of their testimony; (ii) the defense of five
14 depositions noticed of UFP representatives; (iii) the questioning for two third-
15 party witness depositions that have been noticed; (iv) the final preparation of
16 a deposition notice to JCA that includes a significant list of categories of
17 testimony for the deposition; (v) the preparation of final requests for
18 production of documents to JCA; (vi) preparation of other final deposition
19 notices (with attendant document demands) to two to three other JCA
20 representatives; (vii) the final preparation of a deposition notice to a third-
21 party that includes a significant list of categories of testimony for the
22 deposition, as well as document demands, and (viii) the preparation of overall
23 litigation strategies and remaining discovery plans in the case.  Mr. Fuller
24 also needs to coordinate these litigation issues with his other trial calendars.
25 (Sullivan Decl., ¶ 12; Fuller Decl., ¶ 4.)

26  A 90-day continuance of the Scheduling Order dates is therefore reasonable
27 and necessary, under the unanticipated circumstances, to allow Mr. Fuller
28 effectively to represent UFP through trial.  (Fuller Decl., ¶ 7.)

-8-

Case No. 09cv0265 JM(AJB)

Sullivan will also likely have a limited role, at least in the short term, in assisting new lead counsel in completing discovery and other litigation tasks in this case. As explained above, since mid-March 2010, Sullivan has been required to devote substantial time to handle the workload of his ill law partner. The substantial workload relates to the firm's largest client. (Sullivan Decl., ¶¶ 14-16.) This circumstance also was not known in November 2009.

### 3. UFP Promptly Requested Modification Of The Scheduling Order Dates After It Became Apparent That Compliance With The Dates Was Not Possible.

This Application was filed just 2 days after UFP learned that JCA would not consent to seek joint modification of the dates to accommodate UFP's new lead trial counsel and his need to participate in trial preparation actions consistent with his schedule. (Sullivan Decl., ¶¶ 17-18.)

. . . . .

Sullivan was served with a deposition subpoena in the case from JCA counsel on about April 7, 2010. Before then, Sullivan was never informed that JCA would depose him or possibly make him a witness in the case. (Sullivan Decl., ¶ 8.) The deposition subpoena was served less than 3 months before the discovery cut-off dates and less than two months before the date to select expert witnesses in the case. JCA intends to depose Sullivan and will not consider obtaining information through stipulations or written interrogatories. (Sullivan Decl., ¶ 9.)

After service of the deposition subpoena on him, Sullivan consulted with UFP about the ramifications of his possible witness status in the case. With direction from UFP, Sullivan then began interviewing new lead counsel in the case. Three firms were interviewed,and the law firm of Fuller Jenkins was selected as new trial counsel. (Sullivan Decl., ¶¶ 10-11.)

After Mr. Fuller agreed to be retained in this matter, Sullivan left

messages with JCA's counsel on April 20, 2010 to discuss the need to continue the Scheduling Order dates and to coordinate about remaining discovery items. Sullivan spoke with JCA counsel on the matter on April 21, 2010. JCA's counsel understood the request, and stated he would respond no later than noon on April 27, 2010, regarding whether JCA would consent to seek a continuance of the dates. (Sullivan Decl., ¶ 17.)

But JCA's counsel was unavailable to discuss the matter on April 27, 2010. He did not inform Sullivan until April 28, 2010, that JCA would not consent to move any dates in the Scheduling Order. (Sullivan Decl., ¶ 18.) UFP therefore moved timely after receiving this information, and timely under the circumstances, to seek modification of the Scheduling Order.

### 4. UFP Would Be Prejudiced If Mr. Fuller Is Not Allowed Additional Time Under The Circumstances To Prepare The Case For Trial As New Lead Counsel.

Mr. Fuller needs adequate time to become familiar with the facts of this case and, to prepare for final discovery efforts as to JCA, to prepare for remaining UFP deposition and third party depositions based on his case theories, to identify areas of expert witnesses testimony and to select appropriate expert witnesses, and generally to put his imprint on the case as new lead counsel. UFP requests only a 90-day continuance of the Scheduling Order dates to allow Mr. Fuller the time needed to represent UFP effectively. (Fuller Decl., ¶ 7.) Without that additional time, Mr. Fuller cannot adequately address the remaining discovery items and related litigation strategies in the case, and cannot provide fully effective representation to UFP. (Fuller Decl., ¶ 7.)

## C. CONCLUSION

Good cause exists to modify the Scheduling Order dates by 90 days. JCA's late-in-the-case discovery tactic to seek to depose Sullivan has caused the need for UFP to retain new counsel in this matter. But JCA will not accommodate the reasonable requests to modify dates in the case. The developments in the case

1  relating to Sullivan as an apparent witness, and his present requirement
2  primarily to handle the workload of an ill law partner, were not foreseen at the
3  time of the Scheduling Conference.

4  UFP moved timely to retain new lead trial counsel and to attempt to
5  coordinate with JCA's lawyers to seek a joint request to modify the dates. This
6  application was timely filed just 2 days after JCA refused to agree to modify
7  any dates in the Scheduling Order. And UFP will be prejudiced if its new lead
8  trial counsel is not allowed sufficient time to participate in remaining
9  discovery in this matter and to put his imprint on the case.

10  Good cause exists as described above for a 90-day continuance of the
11  Scheduling Order dates. *See Luckett v. Conlan* 561 F.Supp.2d 970, 977 (N.D. Ill.
12  2008) (good cause existed to extend the expired date for amendments where
13  amendment was required due to new developments in the case); *see also Hood v.*
14  *Hartford Life And Acc. Ins. Co.*, 567 F.Supp.2d 1221, 1226 (E.D. Cal. 2008) (good
15  cause existed to amend complaint after deadline due to new developments in facts
16  and law).

17

18  Dated: April 29, 2010                    PRAIRIE SCHWARTZ HEIDEL, LLP
19
20
                                             By: ____S/ Kevin P. Sullivan_____
21
                                                Kevin P. Sullivan
22                                              Attorneys for Plaintiff/Counter-Defendant
                                                UNIQUE FUNCTIONAL PRODUCTS, INC.
23                                              ksullivan@pshlawyers.com
24
25
26
27
28