# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIQUE FUNCTIONAL PRODUCTS, INC., a California corporation,<br><br>                          Plaintiff,<br>    v.<br>JCA CORPORATION, a Washington corporation; and DOES 1 through 25, inclusive,<br><br>                          Defendants.<br>JCA CORPORATION, a Washington corporation,<br><br>                        Counter-Claimant,<br>    v.<br>UNIQUE FUNCTIONAL PRODUCTS, INC., et al.,<br><br>                        Counter-Defendants. | CASE NO. 09-CV-265-JM (MDD)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Doc. No. 87 |

Plaintiff Unique Functional Products, Inc. ("UFP") brought the instant suit against Defendant JCA Corporation ("JCA") and its individual co-owners, Hun Choe and Chun Choe (together, the "Choes"), based on UFP's purchase of certain allegedly faulty boat trailer components from JCA and a related settlement agreement between the parties. Specifically, UFP's second amended complaint states seven causes of action: (1) breach of contract, (2) breach of covenant of good faith and fair dealing, (3) declaratory relief, (4) breach of express warranty, (5) breach of implied warranty, (6) conversion and constructive trust, and (7) fraud. (Doc. No. 86, hereafter "SAC.") All causes of action are alleged against JCA, while

the Choes are named as defendants to UFP's fraud claim only. (Id.)

JCA and the Choes (collectively, "Defendants") now move to dismiss the fraud cause of action as well as any requests for punitive damages. (Doc. No. 87.) Pursuant to CivLR 7.1(d)(1), the court determines this matter is appropriate for resolution without oral argument. For the reasons set forth below, the court hereby GRANTS the motion to dismiss.

## I. BACKGROUND

UFP is a San Diego–based company engaged in the manufacture and supply of parts for boat trailers. (SAC ¶ 3.) JCA is a supplier of trailer components based in the State of Washington. (Doc. No. 3 pp. 10-29, ¶ 3.) The two companies have conducted business with one another since November 1998, when UFP began purchasing boat trailer parts from JCA. (Id. ¶ 11.) The facts relevant to the instant motion are set forth below.

In 2001, UFP began purchasing certain parts known as torsion cartridges from JCA. (SAC ¶ 11.) UFP would incorporate these torsion cartridges into boat trailer axle assemblies, which it then sold to boat trailer manufacturers as well as members of the general public. (Id.) The quality and fitness of the cartridges for their intended use were expressly warranted by JCA. (Id.)

According to UFP, sometime after it began purchasing the parts from JCA, the torsion cartridges began to malfunction, causing UFP's axle assemblies to fail and prompting several of UFP's customers to file warranty and cost claims with the company. (Id.) In April of 2002, UFP contacted JCA and Hun Choe to discuss the damages UFP had incurred as a result of the faulty torsion cartridges. (Id. ¶ 46.) In particular, UFP claimed that one of its major customers, Mastercraft Boats, had terminated its business relationship with UFP after the failure of a substantial number of the torsion cartridges it had purchased from UFP. (Id.) UFP and JCA subsequently engaged in a dialogue over the next few months in an attempt to settle their dispute. (Id. ¶¶ 46-47.) According to UFP, the Choes met with UFP's representatives on several occasions during this time and "wrote numerous e-mails and memorandums [*sic*] encouraging UFP to agree to a settlement with JCA." (Id. ¶ 47.) Finally, on or around July 17, 2003, UFP entered into an agreement with JCA (the "Agreement") whereby JCA would pay

1  UFP $1,790,000 in order to settle UFP's past warranty claims as well as to compensate UFP
2  for its lost business. (Id. ¶¶ 14, 48.) In exchange, UFP agreed not to pursue institution of a
3  recall on the torsion cartridges. (Id. ¶ 50.) The Agreement permitted JCA to delay payment of
4  the $1.79 million settlement so that it could seek reimbursement from Hung-A, the company
5  that originally manufactured the cartridges. (Id. ¶ 48.) UFP claims that, "based on JCA's and
6  the Choe's [*sic*] written and verbal commitments," its understanding of the Agreement was that
7  JCA would eventually pay the entire settlement amount, regardless of whether it was able to
8  recover any money from Hung-A. (Id. ¶ 49.) Hun Choe signed the Agreement on JCA's behalf
9  in his capacity as President. (Id. ¶ 48.)

10  UFP filed suit in state court on January 12, 2009, demanding payment of the full
11  settlement amount along with damages related to other alleged wrongs committed by
12  Defendants. (Doc. No. 1.) On February 12, 2009, JCA removed the action to this court, citing
13  diversity jurisdiction under 28 U.S.C. § 1332. (Id. at p.2.)

14  On or around August 16-18, 2010, UFP took the depositions of both Hun Choe and
15  Chun Choe, who testified as the persons most knowledgeable with regard to JCA's operations.
16  (SAC ¶ 62.) According to UFP, the Choes both gave testimony to the effect that JCA had never
17  intended to honor the unequivocal promise to pay the settlement amount embodied in the
18  Agreement. (Id.) Rather, the Choes stated that JCA had either (1) never intended to pay the
19  settlement amount at all; (2) intended to pay the settlement amount only if it obtained recovery
20  from Hung-A; or (3) intended to exercise its discretion as to whether and how much to pay,
21  even if it recovered from Hung-A. (Id.) Based on this testimony, UFP subsequently filed its
22  first amended complaint ("FAC") to add the Choes as individual defendants along with a new
23  cause of action for fraud. (See Doc. No. 40.)

24  JCA and the Choes subsequently moved, *inter alia*, to dismiss the FAC's fraud cause
25  of action as inadequately pled under FED. R. CIV. P. 9(b). (Doc. No. 65.) That portion of the
26  motion was granted by the court with leave to amend (Doc. No. 85), and UFP filed its SAC
27  on May 16, 2011. Defendants now once again bring a motion to dismiss the fraud claim, and
28  also request that all requests for punitive damages be stricken from the SAC. (Doc. No. 87.)

The motion is opposed by UFP. (Doc. No. 88.)

## II. LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) challenges the legal sufficiency of the pleadings. De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978). In evaluating the motion, the court must construe the pleadings in the light most favorable to the non-moving party, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). While Rule 12(b)(6) dismissal is proper only in "extraordinary" cases, United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981), the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The court should grant 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

## III. DISCUSSION

### A. Fraud

FED. R. CIV. P. 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting [that] fraud or mistake." This pleading standard is met if the complaint "identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations. The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993) (internal quotation marks and citations omitted); see also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." (quoting Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997))). In addition, "[t]he plaintiff must set forth what is false and misleading about a statement, and why it is false." In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541, 1548 (9th Cir. 1994). Moreover, to the extent that fraud is alleged with regard to multiple defendants, "Rule 9(b) does not allow a complaint to merely lump [them] together but 'require[s] plaintiffs to

1 differentiate their allegations when suing more than one defendant . . . and inform each
2 defendant separately of the allegations surrounding his alleged participation in the fraud.'"
3 Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) (quoting Haskin v. R.J. Reynolds
4 Tobacco Co., 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)).

5 As discussed above, UFP's fraud claim is based on its allegation that JCA—through its
6 representatives, including the Choes—falsely represented to UFP in the course of the parties'
7 settlement negotiations that JCA would agree to pay UFP a certain settlement amount, and that
8 that payment would be made regardless of JCA's ability to obtain recovery from Hung-A.
9 According to UFP, those statements induced it to enter into the Agreement with JCA, thereby
10 foregoing its other legal remedies.

11 Defendants now argue that UFP has once again failed to plead with particularity the
12 specific statements underlying its fraud claim. (Doc. No. 87-1 p.5.) In addition, with regard to
13 UFP's claims against the Choes themselves, Defendants claim that UFP has not identified
14 which statements were allegedly made by which individual, but rather has merely "'lump[ed]'
15 the alleged representations of the Choes together" in violation of Rule 9(b). (Id. at p.6.)

16 Following the dismissal of its fraud cause of action from the FAC, UFP amended that
17 portion of its complaint to add several new allegations, ostensibly in an attempt to satisfy
18 Rule 9(b)'s pleading standard. (See SAC ¶¶ 51-60.) However, as Defendants correctly note,
19 these new allegations add little in the way of detail regarding the purported misrepresentations
20 that are the basis of UFP's fraud claim. Like the FAC, the SAC continues to make only broad
21 generalizations regarding the overall tenor of the conversations between UFP and Defendants
22 in the period leading up to the signing of the Agreement. For example, UFP now claims that
23 "[d]uring the oral and written negotiations between [UFP and Defendants] during the period
24 April 2002 to July 17, 2003, the Choes always represented that JCA would pay UFP $1.79
25 million without condition." (Id. ¶ 51.) UFP further alleges that, over some unspecified period
26 in 2003, "Mr. Choe consistently told [a UFP representative] the entire amount of the settlement
27 would be paid to UFP regardless of the outcome of the Korean lawsuit." (Id. ¶ 53.) However,
28 merely stating that a party "always" or "consistently" made certain misrepresentations falls

short of the specificity required to plead fraud under Rule 9(b), particularly when the alleged misrepresentations are said to have occurred sometime within a twelve- to fifteen-month period. UFP should be able to specifically identify the misleading statements made by Defendants in order to bring a claim for fraud in federal court. While the complaint need not provide the exact date each statement was made or a verbatim recitation of what was said or written, UFP *is* required to provide information sufficient to put Defendants on notice of the particular events on which it is basing its fraud cause of action. In addition, to the extent that UFP has brought a claim for personal liability against both Mr. and Mrs. Choe, it should have described what acts were taken separately by each individual in furtherance of the alleged fraud.

UFP argues in its opposition that it has "pled numerous specific examples of the written and oral fraudulent misrepresentations alleged." (Doc. No. 88 p.1.) In support of this contention, it cites to six different occurrences described in the SAC. (Id. at p.2.) However, none of these allegations provides the necessary detail relating to the fraud supposedly perpetrated by Defendants. The first, regarding the signing of the Agreement by Mr. Choe on or around July 17, 2003, is completely irrelevant. UFP's fraud allegation is based on the contention that Defendants "stat[ed] verbally and in writing [that] JCA would pay the settlement amount," even though they had no intention of doing so. (SAC ¶ 63.) Thus, the misrepresentation that must be pled with specificity is the statement or statements made to UFP *prior to* the signing of the Agreement, not the signing of the Agreement itself. The second, third, and fourth examples given by UFP only cite more vague allegations of the type described above: that "[b]efore signing the Settlement Agreement in July 2003," Mr. Choe told two UFP representatives that he would pay the full amount; that between April 2002 and July 17, 2003, the Choes "always represented" that JCA would pay the settlement amount unconditionally; and that Mr. Choe "consistently represented" the same in 2003. (Doc. No. 88 p.2.)

While the fifth example comes closer in terms of identifying a specific statement made within a narrower time frame, it fails to show why the statement made was false or misleading. According to UFP, two of its representatives met with Mr. Choe in person sometime in June

2002 at UFP's facility in San Marcos, California. (SAC ¶ 55.) At that meeting, "Mr. Choe agreed on behalf of JCA to pay UFP the $1.79 million settlement figure. Mr. Choe made it clear to [the UFP representatives] that JCA takes care of its customers and would pay the damages as agreed upon to cover UFP's lost profits." However, this does not address the issue of whether Mr. Choe indicated that the promised payment was to be unconditional, which is the point of contention between the parties. The fact that Mr. Choe told the UFP representatives that JCA would pay a certain settlement amount, and that "JCA takes care of its customers," is not an explicit indication that Defendants were agreeing to pay UFP the full $1.79 million regardless of the outcome of JCA's pending lawsuit in Korea.

Finally, UFP's sixth example also falls short. UFP alleges that Mrs. Choe sent a UFP representative an e-mail sometime between June 12 and June 23, 2003 discussing changes to the proposed settlement agreement. (SAC ¶ 58.) UFP claims that this e-mail communication was false or misleading because in it, Mrs. Choe "never revealed to UFP her true intent" not to pay the $1.79 million settlement amount if JCA failed to recover the money from Hung-A. (Id.) However, a failure by Mrs. Choe to reveal her true intent is only meaningful if there is some allegation that Defendants misrepresented that intent at some prior stage in the parties' negotiations. As this court has previously found, the payment clause of the Agreement itself is ambiguous; it could be interpreted as either an unconditional or a contingent promise to pay. (Doc. No. 62 p.7.) Therefore, in order for Defendants to have fraudulently induced UFP into signing the Agreement, there needs to have been some earlier *affirmative misrepresentation* of Defendants' intent to pay, not merely a failure to more thoroughly explain Defendants' own understanding of the true meaning of the Agreement's terms.[1]

Therefore, UFP's fraud claim continues to be inadequately pled under Rule 9(b), and should be dismissed.

### B. Punitive Damages

Defendants also move to dismiss all allegations from the SAC requesting punitive

---

[1] For the same reason, UFP's other allegations regarding the multiple instances in which Defendants failed to discuss the contingent nature of the agreed-upon payment are not sufficient to support UFP's fraud claim. (See, e.g., SAC ¶¶ 56, 53, 60.)

damages, namely paragraphs 44 and 67 with regard to the conversion and constructive trust and fraud claims, and paragraph 4 of the prayer for relief. (Doc. No. 87-1 p.9.) Defendants argue that UFP has failed to plead "malice, oppression, or fraud . . . with specificity," which is required under CAL. CIV. CODE § 3294 and relevant California case law in order to demonstrate an entitlement to punitive damages. (Id. at p.8.) In addition, Defendants claim that UFP's conversion and constructive trust claim does not contain even a conclusory allegation of "malice, oppression, or fraud," but rather merely states UFP's entitlement to punitive damages. (Id. at pp. 8-9.)

To the extent that Defendants rely on California state law pleading requirements as grounds for dismissal, this reliance is misplaced. While § 3294 may state the *substantive* elements required in order for UFP to ultimately obtain punitive damages, pleading requirements are procedural in nature and thus, in matters before this court, controlled by the Federal Rules of Civil Procedure. See, e.g., Neveu v. City of Fresno, 392 F. Supp. 2d 1159, 1184 (E.D. Cal. 2005); Bureerong v. Uvawas, 922 F.Supp. 1450, 1480 (C.D. Cal. 1996). Thus, UFP need only meet the requirements of Rule 9(b) in pleading the conditions that justify its request for punitive damages.

Nevertheless, UFP has failed to adequately plead its entitlement to punitive damages even under Rule 9(b)'s more lenient standard.[2] As Defendants correctly point out, the sixth cause of action for conversion and constructive trust merely alleges that JCA "took possession and custody" of certain materials belonging to UFP, and refused to return them. (SAC ¶¶ 41-42.) Nowhere does it state that JCA acted in a malicious, oppressive, or fraudulent manner; UFP merely states that "as a result of the [money] damages" suffered, it "seeks, and is entitled to recover, punitive damages." (Id. ¶ 44.) UFP also requests punitive damages be awarded based on the alleged fraud committed by Defendants. (Id. ¶ 67.) However, as discussed above, UFP has failed to adequately plead that cause of action, such that the fraud claim must be dismissed in its entirety. These two causes of action being the only sources of UFP's prayer

---

[2] Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," and not with the specificity required by California law.

1  for punitive damages, that final prayer must also be dismissed from the complaint.

2  **IV.  CONCLUSION**

3  For the foregoing reasons, the court hereby GRANTS Defendants' motion to dismiss and dismisses UFP's seventh cause of action for fraud and its requests for punitive damages in paragraphs 44 and 67 and paragraph 4 of the prayer for relief in the SAC. (Doc. No. 87.) Although UFP has indicated that it may be able to provide further detail about Defendants' alleged misrepresentations if leave to amend is granted a second time (see Doc. No. 88 p.3 n.5), this statement implies that Plaintiff hedged its bet on this motion, reserving certain information regarding the alleged fraud in the event its claim was deemed insufficient as currently pled. While UFP may have withheld its additional allegations "[o]ut of an abundance of caution," the court presumes that these allegations were held back because they were insufficiently material to include in the SAC. Because Plaintiff neither included these additional facts in its SAC nor suggested how "additional details" would be material, the court concludes that UFP has done its best to allege fraud in the SAC. Similarly, although Defendants' motion to strike previously challenged as inadequately pled UFP's claim for punitive damages in its conversion and constructive trust cause of action (see Doc. No. 4-1 p.5),[3] UFP has failed to remedy this defect in its SAC. Therefore, the court is compelled to deny leave to amend as to both the fraud cause of action and all requests for punitive damages. Moreover, given that the pretrial and trial dates have already been vacated once in this matter, every effort should be made to move this case forward expeditiously.

**IT IS SO ORDERED.**

DATED: August 3, 2011

Hon. Jeffrey T. Miller
United States District Judge

---

[3] This motion was denied on the grounds that the issue was improperly raised under Rule 12(f) instead of Rule 12(b)(6). (See Doc. No. 85 pp. 11-12.)